Dr. Clyde M. MORRIS, Appellee,

v.

Thomas J. CLIFFORD, Dr. Alice T. Clark, Dr. Vito Perrone, Dr. Cecelia Traugh, Dr. Donald Piper, Dr. Donald K. Lemon, Dr. Larry L. Smiley and Dr. Richard Hill, Appellants.

No. 89–5165.

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1990.

Decided May 16, 1990.

Gary R. Thune, Bismarck, N.D., for appellants.

David C. Thompson, Fargo, N.D., for appellee.

Before BEAM, Circuit Judge, and HEANEY, Senior Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Defendants appeal from the district court's [1] denial of their motion for summary judgment on qualified immunity grounds. Because we agree with the district court's conclusion that genuine issues of material fact exist concerning whether qualified immunity shields defendants from liability for actions taken to cause the discharge of plaintiff, a tenured faculty member at the University of North Dakota, we affirm.

I.

Plaintiff Clyde Morris became a tenured faculty member in the field of educational administration at the University of North Dakota (UND) in 1966. He served as chair of the Department of Education in 1968 and 1969, until the Department was merged into a "New School of Behavioral Studies" in 1970. Morris and his colleagues in the Department of Education opposed the merger, and Morris cast the lone dissenting vote against defendant Vito Perrone, who was elected Dean of the New School. Morris claims his opposition to the merger and to Perrone's candidacy created

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

an antagonism between himself and Perrone, which ultimately caused his termination.

Morris alleges that prior to the events leading to his discharge, he had never received a negative evaluation of his performance as a professor nor had any negative material been placed in his personnel file during his fifteen years at the University. Pursuant to a policy adopted in 1975, he received his first written review in 1977, which cited both "strengths" and "areas needing improvement." His next scheduled review took place in 1980.

After this review, on July 9, 1980, defendant Perrone sent Morris a letter informing him that unless his performance in eight "problem areas" improved, Morris would receive a terminal contract for the 1981–82 school year. Morris responded in writing, indicating his view that the criticisms made were "overstated if not totally unfounded." [2] In November, 1980, defendant Cecelia Traugh, who was acting as dean while Perrone was on sabbatical, sent Morris a letter almost identical to that sent by Perrone in July. Traugh's letter was placed in Morris' personnel file.

The next month, the educational administration faculty met to conduct the review of Morris' performance suggested by Perrone. Although this review was to determine whether Morris would be discharged from the University, Morris alleges he was not presented with any written materials relating to his allegedly deficient performance until this meeting and was given no legitimate opportunity to respond to any specific material. After the meeting, Acting Dean Traugh again recommended Morris be issued a terminal contract. Defendant Thomas Clifford, President of the University, accepted this recommendation and informed Morris on April 13, 1981, that he would receive a terminal contract for the 1981–82 school year.

In a letter dated May 29, 1981, the President explained the basis for his decision was Morris' "substantial and manifest neglect of duty." Morris appealed this decision, and the President assembled a special review committee on June 21, 1981, to review the procedures which led to the decision to terminate Morris. The special committee held a meeting in mid-July. Defendant Perrone and others named in plaintiff's complaint submitted a "black notebook" full of materials they had assembled to support Morris' termination. Morris objected to the use of these materials, which were never a part of his personnel file and which he received only twenty four hours prior to the meeting. Several days later, the special committee issued findings which adopted the views of defendant Perrone that Morris should be terminated.

Morris then appealed to the Standing Committee on Faculty Rights, which held a hearing in November, 1981. On January 26, 1982, three of the five members of the committee issued recommendations to the President which concluded that Morris' termination was *not* justified. On February 8, 1982, President Clifford nonetheless confirmed his previous decision not to renew Morris' contract for the 1982–83 school year.

Morris is now sixty-seven years of age. Unable to find employment in his field since his termination, Morris sued the University, the President, Dean Perrone, and several others involved in the decision to fire him, alleging he had been denied procedural and substantive due process. Defendants moved for summary judgment. The magistrate [3] recommended dismissal of Morris' claims against the University and the individual defendants in their official capacities on the ground that the suit was barred by the Eleventh Amendment, since the state had not waived its sovereign immunity. *See Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d

---

**2.** For example, in response to a concern over the level of his research and scholarly activity, Morris indicated he had published a book in 1974, had published six articles in the last two years, had conducted a number of seminars, workshops, and professional presentations, and had written several works on aspects of school law for potential publication.

**3.** The Honorable Karen K. Klein, United States Magistrate, District of North Dakota.

662 (1974); *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201–02 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989); *Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). The magistrate recommended that summary judgment be denied on plaintiff's claims against the defendants in their individual capacities on the ground that genuine issues of fact precluded summary judgment.

The district court accepted the magistrate's recommendation on the issue of sovereign immunity and granted summary judgment in favor of the University and the defendants in their official capacities. The court also granted summary judgment in favor of the individual defendants on plaintiff's procedural due process claim, concluding that while earlier proceedings may not have fulfilled all due process requirements, the final hearing before the Standing Committee on Faculty Rights did meet these requirements. *See Agarwal v. Regents of the University of Minnesota*, 788 F.2d 504, 508 (8th Cir.1986). The district court agreed with the magistrate that summary judgment should be denied on Morris' substantive due process claim, holding the record reflected a genuine issue of material fact regarding whether Morris' discharge was the result of "arbitrary and capricious treatment at the hands of defendants who acted in concert to ratify and substantiate after the fact a pretextual and vindictive decision" made by Perrone in July, 1980, to terminate Morris.

## II.

■ Defendants have appealed. The sole issue before us is whether defendants are entitled to qualified immunity from individual liability as a matter of law. Defendants may not invoke the defense if their conduct violates "clearly established

constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is "clearly established" if the contours of the right are such that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). *See Holloway v. Conger*, 896 F.2d 1131, 1136–37 (8th Cir.1990).

■ Plaintiff contends that defendants' actions amounted to a violation of his clearly established right to be free from vindictive, arbitrary, and capricious discharge. Plaintiff cites as a basis for this right the regulations on Academic Freedom, Tenure, and Due Process contained in the Faculty Handbook and referenced by the President in informing plaintiff of his termination. These regulations provide that a tenured faculty member can be dismissed only for "adequate cause." [4]

Defendants agree these provisions give plaintiff, as a tenured faculty member, a constitutionally protected property interest in continued employment. *See Moore v. Warwick Public School District*, 794 F.2d 322, 328–30 (8th Cir.1986); *Agarwal v. Regents of the University of Minnesota*, 788 F.2d 504, 507–08 & n. 2 (8th Cir.1986); *Stermetz v. Harper*, 763 F.2d 366, 367 (8th Cir.1985); *O'Neal v. City of Hot Springs Nat'l Park*, 756 F.2d 61, 62–63 (8th Cir. 1985); *Miller v. Dean*, 552 F.2d 266, 268 (8th Cir.1977); *Fisher v. Snyder*, 476 F.2d 375, 376–77 (8th Cir.1973). *See generally Harrah Independent School District v. Martin*, 440 U.S. 194, 197–99, 99 S.Ct. 1062, 1063–65, 59 L.Ed.2d 248 (1979); *Slochower v. Board of Education*, 350 U.S. 551, 554–55, 559, 76 S.Ct. 637, 638–40, 641–42, 100 L.Ed. 692, *modified on denial of rehearing*, 351 U.S. 944, 945, 76 S.Ct. 843,

---

**4.** "Adequate cause" is defined to include:
  (a) demonstrated incompetence or dishonesty in teaching or research,
  (b) substantial and manifest neglect of duty,
  (c) personal conduct, including but not limited to moral turpitude or criminal conduct

which substantially impairs the individual's fulfillment of institutional responsibilities, or
  (d) a physical or mental inability to perform assigned duties.

100 L.Ed. 1470 (1956).[5]

Defendants further concede that in addition to procedural due process rights,[6] plaintiff has a substantive due process right to be free from discharge for reasons that are "arbitrary and capricious," or in other words, for reasons that are trivial, unrelated to the education process, or wholly unsupported by a basis in fact. *E.g., Fisher,* 476 F.2d at 377–78. *See Honore v. Douglas,* 833 F.2d 565, 568–69 (5th Cir. 1987); *Gargiul v. Tompkins,* 704 F.2d 661, 667–69 (2d Cir.1983), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). Under these circumstances, we conclude plaintiff's right as a tenured faculty member to be discharged only for "adequate cause" was clearly established at the time defendants acted. *See Newman v. Commonwealth of Massachusetts,* 884 F.2d 19, 24–26 (1st Cir.1989); *Miller,* 552 F.2d at 268; *Fisher,* 476 F.2d at 376–78. *See generally,* T. Lovain, *Grounds for Dismissing Tenured Postsecondary Faculty for Cause,* 10 J. of C. & U.L. 419, 421–22 (1983).

This, of course, does not end our inquiry. Because the Supreme Court's *Harlow* decision emphasizes an objective inquiry into the legal reasonableness of defendants' actions, we must now examine whether defendants, as reasonable college faculty members and administrators, should have known that *what they did* violated plaintiff's rights. *See Anderson,* 483 U.S. at 640–41, 107 S.Ct. at 3039–40; *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

Defendants correctly point out that this Court has granted summary judgment on immunity grounds when the conduct established by the evidence, viewed in the light most favorable to the plaintiff, is objectively reasonable, even where evidence of improper motive may also exist. *See Russell v. Hardin,* 879 F.2d 417, 420–21 (8th Cir. 1989); *Wright v. South Arkansas Region-*

*al Health Center, Inc.,* 800 F.2d 199, 204–05 (8th Cir.1986). *See also Arnold v. Jones,* 891 F.2d 1370, 1372–74 (8th Cir. 1989).

In *Russell,* for example, we ruled summary judgment should be granted on qualified immunity grounds where law enforcement officials who had probable cause to search a house subsequently retained for safekeeping silver found in the search, as they were lawfully entitled to do. *See* 879 F.2d at 420–21. The fact that one of the agents knew the owner owed taxes and alerted the IRS to the existence of the silver did not change the objective reasonableness of the agent's conduct. *Id.*

We reached a similar result in *Wright,* where plaintiff, a former director of the South Arkansas Regional Health Center, alleged defendant Ray Scott, director of the Arkansas Department of Human Services, acted "for purposes of political retaliation." Scott admitted he had conducted an investigation of plaintiff after receiving information about possible Medicare and Medicaid fraud from a Center employee, and had turned the results of the investigation over to the United States Attorney. 800 F.2d at 203–04.

Plaintiff did not deny the seriousness of the charges made against him by the Center employee, nor had he presented evidence that Scott violated any state law or deliberately or recklessly provided false information to federal authorities. Although Scott may have had a political motive and some of the information he provided proved not to be true, the Court ruled that his "unremarkable" conduct, as a matter of law, did not amount to a violation of clearly established constitutional law. *See id.* at 204–05.

The *Wright* Court nonetheless acknowledged that "many cases will present a factual question of motivation incapable of

---

**5.** Plaintiff also claims a violation of a liberty interest, but defendants correctly assert that no liberty interest is implicated in this case. *See Agarwal v. Regents of University of Minnesota,* 788 F.2d 504, 507 n. 2 (8th Cir.1986) (citing *Board of Regents v. Roth,* 408 U.S. 564, 573–75, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972)).

**6.** The district court found plaintiff was afforded procedural due process, and plaintiff has not appealed this ruling.

resolution on summary judgment," *id.* at 205, and courts have held that consideration of an official's intent may be necessary where the existence of a violation depends upon proof of motivation. *See, e.g., Poe v. Haydon,* 853 F.2d 418, 430–32 (6th Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). As the Sixth Circuit has observed,

> if a public employer terminates a black employee because he is black, that act clearly violates federal constitutional and statutory law. If, however, the employer terminates the black employee because of incompetence, then the discharge obviously does not violate the law at all. The act itself—the act of discharge—is neutral; it is the motive or intent that makes the act both actionable and violative of clearly established law.

*Id.* at 431 (citation omitted). *See also Suarez v. Illinois Valley Community College,* 688 F.Supp. 376, 385 (N.D.Ill.1988).

In *Tubbesing v. Arnold,* 742 F.2d 401 (8th Cir.1984), this Court recognized that qualified immunity would not protect state officials who discharged, for political reasons, an employee who could be discharged only for good cause. Summary judgment was proper in *Tubbesing* because the plaintiff had not only failed to present any *evidence* of political motivation or malice,[7] but had also failed to prove a "clearly established" right to discharge for cause only, since members of the Board of Election Commissioners testified she served at their pleasure. *Id.* at 406–07.

Unlike the *Tubbesing* case, there is evidence in this case from which a trier of fact could infer a clearly established right to discharge for good cause alone and an antagonistic relationship between plaintiff and defendant Perrone, which began with plaintiff's opposition to the merger of his department with Perrone's and his vote against Perrone as Dean of the merged entity. Plaintiff argues defendants' reliance on his allegedly poor performance as a reason for their actions is mere pretext, and both the district court and magistrate concluded there was sufficient evidence in the record to support this claim to defeat defendants' summary judgment motion. *See Honore,* 833 F.2d at 569.

We review the district court's decision denying summary judgment *de novo,* viewing the relevant facts surrounding plaintiff's dismissal in the light most favorable to plaintiff. These facts show plaintiff Morris had been a tenured professor in good standing for fifteen years when defendant Perrone wrote him in 1980 that he would be terminated the following year.[8] Prior to Perrone's letter, there had been no overly negative evaluation material in Morris' personnel file. Morris' first written evaluation in 1977 lists at least as many "strengths" as "areas needing improvement," and the tone of the comments is positive and encouraging.

It was only *after* defendant Perrone's letter, and resulting protests from Morris, that Perrone and others compiled materials which purported to assess deficiencies in Morris' performance. These materials were presented to various review committees without giving Morris an adequate opportunity to review or rebut their contents and, according to Morris, could not have been made a part of Morris' personnel file pursuant to state law.[9] The manner in which these materials were prepared and presented support an inference that defendants were attempting to justify after-the-

---

**7.** In fact, plaintiff testified her only evidence of malice was "Well, because I was—because I was just fired." *Tubbesing v. Arnold,* 742 F.2d 401, 405 n. 5 (8th Cir.1984).

**8.** Unlike the plaintiff in *Agarwal,* there is nothing in the record to suggest some serious misconduct immediately prior to Perrone's letter. *Cf. Agarwal,* 788 F.2d at 506–07 (tenured professor found guilty of plagiarism; formal grievance filed by eight students alleging lack of moral integrity and incompetence).

**9.** State statutes require that teachers be given notice of any complaint before it is placed in their file, *see* N.D.Cent.Code § 15–38.2; *City of Grand Forks v. Grand Forks Herald, Inc.,* 307 N.W.2d 572, 576 (N.D.1981), according to plaintiff, to afford individuals the right to answer individual complaints on a contemporaneous basis and to conform their future behavior accordingly.

fact a decision previously made to terminate Morris for reasons relating more to personal animosity and vindictiveness than to his performance as a faculty member. *See Suarez,* 688 F.Supp. at 381–82.

When given the opportunity, plaintiff submitted information to rebut the charges relating to his performance, defending his teaching record and explaining the reasons for some of the alleged deficiencies. A majority of the members of the Faculty Standing Committee, the only body found by the district court to have afforded Morris procedural due process, recommended *against* his termination. While each reviewing faculty member also concluded there were problems with Morris' performance, these problems, at least in the minds of three of the committee members, did not amount to "substantial and manifest neglect of duty." *Cf. Monteith v. Board of Education,* 375 S.E.2d 209 (W.Va.1988) (teacher's dismissal arbitrary and capricious).

Under these circumstances, we believe an issue of fact exists concerning whether a reasonable official would have acted as defendants did to cause the discharge of Morris. *Cf. Mahoney v. Hankin,* 844 F.2d 64, 68 (2d Cir.1988) (resolution of qualified immunity defense involved questions of fact regarding acts of reasonable college administrator); *Harden,* 760 F.2d at 1164–67 (questions of fact existed regarding whether permissible reasons were sufficient to support termination of tenured faculty member). Defendants cite cases in which courts have found insufficient evidence of bias to violate due process in the dismissal of other tenured professors, but these cases all involve findings made by a jury or a judge after trial. *E.g., Smith v. Kent State University,* 696 F.2d 476, 477 (6th Cir.1983).

We recognize that qualified immunity is intended to shield public officials from the burden of trial when their conduct is objectively reasonable, but in this case we agree with the district court that a factfinder must determine the reasonableness of defendants' actions and the validity of plaintiff's claims.

III.

Because plaintiff has presented sufficient evidence to create a genuine issue of fact concerning whether defendants violated clearly established law by acting to cause plaintiff's termination as a tenured professor for reasons that were arbitrary, capricious, and motivated by personal animosity, the district court's denial of defendants' motion for summary judgment is hereby affirmed.