Earl R. HARFORD, Appellant,

v.

UNIVERSITY OF MINNESOTA,
et al., Respondents.

No. C4–92–1187.

Court of Appeals of Minnesota.

Jan. 26, 1993.

Review Denied March 30, 1993.

Andrea F. Rubenstein, Miles W. Lord, Minneapolis, for appellant.

Donald M. Lewis, Julie Fleming–Wolfe, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and NORTON and FOLEY,* JJ.

## OPINION

DAVIES, Judge.

Dissatisfied with a decision arrived at through the University of Minnesota's internal grievance procedure, appellant Earl Harford brought breach of contract and negligent misrepresentation actions in district court. The district court granted the university's motion for summary judgment. Harford contests the district court's application of res judicata and collateral estoppel. Harford also challenges the court's finding that the university did not deny his right to due process. We affirm.

---

* Retired judge of the Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

On April 14, 1978, appellant Earl Harford began employment with respondent University of Minnesota ("university") as director of the Audiology Clinic at the University of Minnesota Hospital and Clinic. As a condition to accepting this position, Harford secured a tenured professorship in the department of otolaryngology.

On March 10, 1986, Arndt J. Duvall, M.D., head of the department of otolaryngology, requested that Harford resign from the clinic directorship. Harford complied, making his resignation effective June 30, 1986, but he later filed a grievance contesting what he deemed a constructive discharge.[1]

The University of Minnesota Regulations Concerning Faculty Tenure ("tenure code") provide:

> 15.1 Right to Review. Any faculty member who claims that his or her rights or status under these regulations have been adversely affected without his or her consent may seek review before the Judicial Committee.

The judicial committee agreed with Harford that his resignation from the clinic directorship constituted a constructive discharge. Although finding that Harford "never understood that his indefinite tenure extended to his administrative position [as director]," the committee applied the tenure code's firing "for cause" requirement in reviewing Harford's loss of the directorship. The committee concluded the discharge was "arbitrary, unjustified, and without due process." The committee recommended that he be awarded compensation and be encouraged to continue his work with the clinics.

In support of its conclusion, the committee noted that Duvall had only been department head for some six months before asking Harford to resign and the department head prior to Duvall had been pleased with Harford's performance for the previous 6½ years. According to the committee, Duvall

neither adequately apprised Harford of his alleged shortcomings nor gave him an opportunity to improve. The committee sent its recommendation to the university president, as required under the tenure code.

On May 18, 1989, President Nils Hasselmo, after hearing oral presentations and reviewing filed written materials, issued his findings, conclusions, and decisions. Under section 15.5 of the tenure code:

> The President may impose the action recommended by the Committee or any action more favorable to the faculty member. The President may impose action less favorable to the faculty member only for important substantive reasons, which must be stated in writing.

In his decision, Hasselmo rejected the committee's recommendations, noting that the committee inappropriately applied standards used for evaluating discharge from a *tenured* position to loss of "an administrative appointment subject to annual renewal or nonrenewal." In Hasselmo's view, requesting Harford's resignation was reasonable as an administrative matter because of the following improprieties: purchasing hearing aids for the clinic at above-market cost from a corporation partly owned by his wife and designating a clinic he had started near his summer home as a university outreach clinic.

Further, Hasselmo accepted the committee's findings that Harford had "never understood that his indefinite tenure extended to his administrative position" and that Harford's discharge did not stem from "a violation of academic freedom."

Section 14.5 of the tenure code provides for appeal to the Board of Regents where the president "imposes a sanction more severe than that recommended by the Judicial Committee." Harford exercised this right of appeal, obtaining a hearing on July 13, 1989, after which the regents issued findings of fact, conclusions, and a decision upholding President Hasselmo's findings,

---

1. The university also terminated Harford's tenured professorship effective July 10, 1987. Although loss of both positions—the directorship and the professorship—was the subject of a con-

solidated hearing before the university's Judicial Committee, this appeal only concerns the directorship.

conclusions, and decision. Of particular significance, the regents found:

2. Dr. Harford's appointment [as clinic director] was dated July 22, 1985 and expired June 30, 1986. *Dr. Harford had held a series of one year appointments to this position since April 17, 1978.*

* * * * * *

5. Dr. Harford's appointment as Director of the Audiology Clinic was *an Administrative Appointment which is not subject to the Regulations Concerning Faculty Tenure.* There was no agreement or understanding between Dr. Harford and the * * * University which provided any substantive or procedural rights to Dr. Harford to continued tenure in that Appointment.

(Emphasis in original.)

On April 9, 1990, Harford filed suit in district court against the university, alleging breach of contract and negligent misrepresentation. On April 7, 1992, the district court entered summary judgment in the university's favor based on res judicata and collateral estoppel. Harford appealed to this court, contesting application of those doctrines and challenging the district court's ruling that the university's grievance procedure provided adequate procedural and substantive due process.

### ISSUES

I. Did the district court err in determining that res judicata precludes Harford from bringing suit in district court?

II. Did the district court err in collaterally estopping Harford from litigating issues previously ruled upon under the University of Minnesota's internal grievance procedures?

III. Did the district court err in finding that the University of Minnesota's internal grievance procedure did not deny Harford's rights to procedural and substantive due process?

### ANALYSIS

■ This court owes no deference to the district court's application of the law. *County of Lake v. Courtney,* 451 N.W.2d 338, 340 (Minn.App.1990), *pet. for rev. denied* (Minn. Apr. 13, 1990).

### I.

■ Harford contends the district court erred in barring his actions in breach of contract and in negligent misrepresentation under the doctrine of res judicata (also called "merger and bar").

"A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein."

*Hauser v. Mealey,* 263 N.W.2d 803, 807 (Minn.1978) (quoting *The Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963)) (emphasis added). The Minnesota Supreme Court has consistently held that res judicata applies to administrative decisions where the agency has acted in a judicial or quasi-judicial capacity. *E.g., Graham v. Special Sch. Dist. No. 1,* 472 N.W.2d 114, 115–116 (Minn.1991); *McKee v. County of Ramsey,* 310 Minn. 192, 194 n. 1, 245 N.W.2d 460, 462 n. 1 (Minn.1976) (citing *State ex rel. Turnbladh v. District Court,* 259 Minn. 228, 231–32, 107 N.W.2d 307, 310 (1960)).

■ Although the university's grievance procedure was arguably quasi-judicial in nature, res judicata cannot apply to claims that "were not raised and over which the administrative agency did not have jurisdiction." *McKee,* 310 Minn. at 195, 245 N.W.2d at 462 (citing *United States v. R.C.A.,* 358 U.S. 334, 352, 79 S.Ct. 457, 468, 3 L.Ed.2d 354 (1959)); *see also Graham,* 472 N.W.2d at 117 (holding application of res judicata inappropriate since school boards lack jurisdiction over defamation, retaliatory discharge, and denial of free speech actions).

In this case, the regents lack jurisdiction to decide breach of contract and negligent misrepresentation claims. We hold, therefore, that res judicata cannot operate as a bar to bringing these actions in district court.

## II.

Harford also challenges the district court's decision to estop him from litigating the issues of whether the university breached its employment contract and whether it negligently misrepresented the directorship as a tenured position. The district court decided estoppel precluded Harford from proving essential elements of his claim and compelled the grant of summary judgment against him.

■ Collateral estoppel is the "issue preclusion" branch of res judicata. *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 613 (Minn.1988) (citing *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 703 (Minn.1982)). Before a court may apply collateral estoppel based on an agency decision:

(1) the issue to be precluded must be identical to the issue raised in the prior agency adjudication;

(2) the issue must have been necessary to the agency adjudication and properly before the agency;

(3) the agency determination must be a final adjudication subject to judicial review;

(4) the estopped party was a party or in privity with a party to the prior agency determination; and

(5) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Graham,* 472 N.W.2d at 116 (citations omitted). Harford contests whether the issues are identical, the finality of the adjudication, and the fairness of his opportunity to be heard.

■ Once a reviewing court determines the elements of collateral estoppel have been met, it can only reverse the trial court upon a finding of abuse of discretion. *Green v. City of Coon Rapids,* 485 N.W.2d 712, 718 (Minn.App.1992), *pet. for rev. denied* (Minn. June 30, 1992).

**2.** The supreme court concluded, however, that whether the findings would be given collateral estoppel effect would depend upon the cause of action. The supreme court gave collateral es-

### A. Whether Issues are Identical

■ In resolving this issue, we rely on *Graham.* There, the supreme court upheld application of collateral estoppel to a school board's finding of teacher misconduct when the teacher later brought a defamation action in district court, reasoning that "the alleged defamatory statements were established to be true in the teacher's termination proceeding." [2] *Graham,* 472 N.W.2d at 119.

Similarly, in this case, the regents found that Harford's clinic directorship was untenured, with his most current appointment extending from July 22, 1985, to June 30, 1986. Under the tenure code, which governs the employment relationship at issue, the university may, without cause, refuse to reappoint a faculty member to an administrative position. Tenure Code §§ 3, 8. It would affront the principle of judicial economy to permit relitigation of this issue in district court.

In addition, the finding that Harford knew the directorship was untenured obviates any need to relitigate whether the university misrepresented this position as tenured. Clearly, then, the requisite identity of issues exists.

### B. Whether Agency Determination Constitutes Final Adjudication Subject to Judicial Review

■ Section 14.5 of the tenure code provides that a faculty member may appeal the president's decision to the Board of Regents within 10 days. Faculty members dissatisfied with a regents' ruling have previously obtained district court review of the university's actions for due process violations. *See, e.g., Mueller v. Regents of Univ. of Minn.,* 855 F.2d 555 (8th Cir.1988); *Agarwal v. Regents of Univ. of Minn.,* 788 F.2d 504 (8th Cir.1986). Obviously, then, the regents' determination constitutes a final adjudication subject to judicial review.

This conclusion is buttressed by the university's concession in its supplemental

toppel effect to the findings of teacher misconduct for Graham's defamation claim, but not for her retaliatory discharge and free speech claims.

brief that Harford could have elected to seek review of the regents' ruling via a writ of certiorari.[3] Moreover, in the interest of judicial economy, the regents' grievance decisions ought to be considered final.

### C. Whether Full and Fair Hearing

In *Graham*, the supreme court struck down application of collateral estoppel to the issues of retaliatory discharge and infringement of First Amendment rights. *Graham*, 472 N.W.2d at 119. The court ruled that the teacher had not been accorded a "full and fair" hearing since, with respect to these claims, the school board had essentially been asked to judge its own conduct, not the employee's. *Id.*

In this case, the question is whether the issues to be precluded bear more resemblance to the school board's finding of teacher misconduct (to which the *Graham* court applied collateral estoppel) or to the board's examination of its own conduct for constitutional and employment law violations. The regents' decision turned on an evaluation of the legitimacy of Harford's conduct—purchase of hearing aids from his wife's company and giving his clinic an identity suggesting a University connection. We find that the regents' ruling more closely resembles the school board's finding of teacher misconduct.

■ In determining whether the party to be estopped had a full and fair opportunity to be heard, reviewing courts also consider such factors as whether lawyers/judges presided, whether the examiner was impartial and made detailed findings, whether hearsay was admissible, whether rules of evidence were followed, whether subpoenas were available, and whether a record was made—in short, this court must examine the proceeding's degree of formality. *See, e.g., Graham*, 472 N.W.2d at 118; *Clapper v. Budget Oil Co.*, 437 N.W.2d 722, 726 (Minn.App.1989), *pet. for rev. denied* (Minn. June 9, 1989).

■ The university's tenure code provides that a panel of five tenured faculty members—not lawyers or judges—presides over grievance hearings. Hearsay may be introduced during the proceedings, and the judicial committee's rules of procedure expressly reject use of the rules of evidence.

On the other hand, the university's grievance procedure incorporates a system of checks and balances. That is, a discharged faculty member may first appeal that decision to peers on the judicial committee, then to the president, then to the regents. A record is kept of the proceedings and reasoned decisions are produced at each tier of the grievance process. Moreover, the tenure code even provides for "subpoenas," requiring faculty members and administrators to testify before the judicial committee. In this case, Harford's counsel was present at all stages. Counsel called and cross-examined witnesses at the judicial committee hearing and presented oral arguments to both the president and the regents.

Because of the formal structure of the grievance process, Harford's argument that he did not have a full and fair opportunity to be heard cannot prevail. Furthermore, as discussed below, the United States Court of Appeals for the Eighth Circuit has found that the university's grievance procedure satisfies procedural due process requirements.

Harford also contends that application of collateral estoppel deprives him of his right to a jury trial. However, *Graham* holds:

> If * * * the nonjury, statutory termination proceeding produces findings which are entitled to judicial recognition and finality, the constitutional right to a jury trial is not violated.

*Graham*, 472 N.W.2d at 118. Further, the university has broad authority to "appoint professors, regulate the course of instruction, and otherwise generally *enact laws* for the government of the university."

---

3. We recognize that Harford could not have obtained a writ of certiorari pursuant to the Administrative Procedure Act since Minn.Stat. § 14.03, subd. 1(f) (1990), explicitly excludes applicability of that Act to decisions by the regents. However, Harford and others similarly situated possess the common law right of certiorari as codified in Minn.Stat. § 606.01–.06 (1990). *See Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981).

*Bailey v. University of Minn.,* 290 Minn. 359, 360, 187 N.W.2d 702, 703–04 (Minn. 1971) (emphasis added). Thus, the tenure code's procedures for terminating tenured faculty and for appealing such decisions may be deemed to have a statutory basis. Under *Graham,* then, Harford's right to a jury trial has not been violated.

In this case, all requisite elements of collateral estoppel are met. Moreover, we cannot say that the district court abused its discretion in applying that doctrine.

## III.

Finally, Harford challenges the district court's ruling that the university's grievance procedure satisfied his right to procedural and substantive due process.

### A. Procedural Due Process

■■■■ The United States Court of Appeals for the Eighth Circuit set forth the requirements of procedural due process in a termination proceeding:

(1) clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them;

(2) notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges;

(3) a reasonable time and opportunity to present testimony in his or her own defense; and

(4) a hearing before an impartial board or tribunal.

*King v. University of Minn.,* 774 F.2d 224, 228 (8th Cir.1985) (quoting *Brouillette v. Board of Directors of Merged Area IX,* 519 F.2d 126, 128 (8th Cir.1975)), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1491, 89 L.Ed.2d 893 (1986).

In this case, Harford only attacks the impartiality of the university's procedure, claiming in his brief that

the University President's full discretion to reject the findings and recommendations of the Judicial Committee Panel renders the entire process no more than a sham. * * * [T]he University, again as

stated in *Graham,* was its own judge, jury and prosecutor.

Harford incorrectly asserts that the president never stated in writing his reasons for rejecting the judicial committee's recommendations. To the contrary, Hasselmo's decision explains that his refusal to adopt the committee's recommendation stems from the committee's improper application of the standard to be used when reviewing termination from a *tenured* position. The regents, likewise, provided a carefully reasoned decision, rendering baseless Harford's allegations that the proceedings were "a sham."

In addition, the United States Court of Appeals for the Eighth Circuit has approved the basic procedures followed in the university's internal grievance process. *See Mueller,* 855 F.2d at 560; *Agarwal,* 788 F.2d at 508. In this case, the university followed the same basic procedures. We hold, therefore, that Harford's claim of denial of procedural due process fails as a matter of law.

### B. Substantive Due Process

■■■■ The United States Court of Appeals for the Eighth Circuit has emphasized the inappropriateness of de novo review by district and appellate courts of the university's termination decisions. *Mueller,* 855 F.2d at 559; *Agarwal,* 788 F.2d at 508. Instead, a reviewing court may only reverse an agency's decision if it finds a lack of substantial evidence to support that ruling. *E.g., Mueller,* 855 F.2d at 559–60 (citing *Wood v. Strickland,* 420 U.S. 308, 325–26, 95 S.Ct. 992, 1002–03, 43 L.Ed.2d 214 (1975)); *Brinks, Inc. v. Minnesota Pub. Utils. Comm'n,* 355 N.W.2d 446, 450 (Minn.App.1984). The Minnesota Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977).

We emphasize that Harford's discharge from the clinic directorship represents an administrative decision. Under the tenure code, the university may refuse *without cause* to renew a nontenured, administrative appointment where such action does

not violate state or federal employment law, result from a "substantial written misrepresentation of the nature of the original appointment," or infringe upon the faculty member's academic freedom or personal liberties guaranteed by the constitution and by section 3.5 of the tenure code. The record here is devoid of any such showings. In fact, the judicial committee, though ruling for Harford, expressly noted the absence of any misrepresentation of the position or any violation of Harford's academic freedom. We hold, therefore, that substantial evidence supports the regents' decision not to renew Harford's appointment.

## DECISION

The district court did not err in applying collateral estoppel to the Board of Regents' ruling, which constitutes a final adjudication subject to timely judicial review. We uphold, likewise, the court's finding that the university did not violate Harford's right to due process. We hold, however, that application of res judicata was inappropriate since the regents had no authority to determine causes of action in breach of contract or negligent misrepresentation.

Affirmed.