**Joseph SAN FILIPPO, Jr., Appellee,**

v.

**Michael BONGIOVANNI, Anthony S. Cicatiello, Adreienne S. Anderson, Donald M. Dickerson, Floyd H. Bragg, Norman Reitman, Individually and as members of the Board of Governors of Rutgers University, Rutgers, the State University, Appellants.**

No. 90-6052.

United States Court of Appeals,
Third Circuit.

Argued May 14, 1991.

Decided April 22, 1992.

John J. Peirano, Jr. (argued), Linda B. Celauro, Carpenter, Bennett & Morrissey, Newark, N.J., for appellants.

Leon Friedman (argued), New York City, Stuart S. Ball, Ball, Livingston & Tykulsker, Newark, N.J., for appellee.

Present: HUTCHINSON, COWEN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

In this certified interlocutory appeal Rutgers, the State University of New Jersey (Rutgers or the University), its Board of Governors (Board) and the Board's individual members appeal an order of the United States District Court for the District of New Jersey. That order granted appellee, Joseph San Filippo, Jr.'s (Dr. San Filippo's) motion for partial summary judgment as to liability on one of several of his claims under 42 U.S.C.A. § 1983 (West 1981) that Rutgers violated his constitutional rights when it stripped him of academic tenure and discharged him from his position as a professor at that University. *See San Filippo v. Bongiovanni,* 743 F.Supp. 327, 339 (D.N.J.1990).[1]

The order granting Dr. San Filippo partial summary judgment concerned his claim that the grounds set forth in the University's regulations for dismissing a tenured professor violated his Fourteenth Amendment due process right to fair notice that the acts he was charged with could lead to dismissal because they were void for vagueness. *Id.*[2]

The sole question before us on this certified appeal is whether the University's regulations were indeed too vague to meet the fair notice requirement incorporated in the due process clause of the Fourteenth Amendment to the Constitution. Therefore, we cannot consider or decide Dr. San Filippo's other express or implied claims, or any implied claim that his discharge violated his constitutional right to substantive due process.[3]

The applicable dismissal regulations state that tenured professors may only be

1. The case remains pending in the district court, but has been stayed pending disposition of this certified interlocutory appeal.

2. Dr. San Filippo's void for vagueness claim is particularly set forth in paragraph twenty-seven of his Third Amended Complaint. It reads:

> 27. The actions of defendants complained of (including the actual dismissal, as described above) violated plaintiff's due process rights under the 5th and 14th Amendments and the comparable provisions of the New Jersey Constitution in that the University regulations under which he was disciplined are vague and uncertain and did not fairly warn him that the acts of which he was accused were violations of University rules. Furthermore, the rules, by specifically mentioning

radically different offenses for which dismissal was appropriate, did not give plaintiff fair warning that the type of offenses involved here were so serious that they could serve as the basis for dismissal.

Appendix (App.) at 973.

3. San Filippo's other express claims include violation of his rights to procedural due process, equal protection and free speech under the United States and New Jersey Constitutions, and a New Jersey state law breach of contract claim.

San Filippo's Third Amended Complaint does not include any express claim that the Board's action to revoke his tenure and discharge him for reasons the contract did not permit was a violation of substantive due process. Paragraphs seventeen and eighteen do, however,

dismissed for adequate cause. Regulation 3.93. Adequate cause is defined as "failure to maintain standards of sound scholarship and competent teaching, or gross neglect of established University obligations appropriate to the appointment, or incompetence, or incapacitation, or conviction of a crime involving moral turpitude...." Regulation 3.94. These regulations are no less definite than provisions permitting discharge for immoral conduct, just cause or conduct unbecoming a teacher. Such provisions have been upheld against void for vagueness attacks in cases involving the discharge of teachers, professors and other public employees. Accordingly, we will vacate the district court's order granting Dr. San Filippo's motion for summary judgment as to liability on his 42 U.S.C.A. § 1983 void for vagueness claim and remand the case to the district court for further proceedings.

## II.

Dr. San Filippo brought suit against the University in the United States District Court for the District of New Jersey. He based his federal claims on 42 U.S.C.A. § 1983. That statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applica-

ble exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The University moved for summary judgment on several grounds, including Dr. San Filippo's claim that the University's regulations governing the dismissal of tenured faculty members were so vague that they violated his right to due process. *See San Filippo*, 743 F.Supp. at 332. Dr. San Filippo filed a cross-motion for partial summary judgment as to liability on this same claim. *Id.* After oral argument, the district court held that the University's discharge regulations, as applied to Dr. San Filippo, were void for vagueness, as they did not give him fair notice that the charges against him could lead to dismissal. Accordingly, it granted Dr. San Filippo's cross-motion. *Id.* at 339.

Ancillary to its order granting Dr. San Filippo partial summary judgment on his void for vagueness claim, the district court denied the University's motions for summary judgment on the void for vagueness claim; to strike certain affidavits and exhibits; and to strike Dr. San Filippo's claim for loss of consulting fees. The district court granted the University's motions to strike Dr. San Filippo's claims for punitive damages, front and back pay, and research grants. *Id.* at 339. It did not decide the remaining motions before it nor did it address the question whether the record before the Board was sufficient for it to find that Dr. San Filippo had committed the particular acts of misconduct which the Board had decided justified his dismissal. *Id.* at 332–33.

Later, the University moved the district court to certify the void for vagueness question for interlocutory appeal, and to

---

contain allegations from which it might be possible to infer a substantive due process claim. They state:

17. ... The relevant rule of dismissal is Rule 3.94 which mentions the following offenses: "failure to maintain standards of sound scholarship and competent teaching, or gross neglect of established University obligations appropriate to the appointment, or incompetence or incapacitation, or conviction of a crime involving moral turpitude." In such cases, and in only such cases, dismissal

is appropriate. But none of the accusations against plaintiff fit within any of the categories mentioned in Rule 3.94 or are remotely covered by, or analogous to, such defined offenses....

18. The conclusion is inescapable that defendants have violated their own standards by invoking as a basis for dismissal conduct which under its own rules do not justify dismissal.

App. at 966–67.

stay the action pending disposition of its petition for permission to appeal and pending appeal if permission is granted. The district court granted the motion and thus amended its order as follows:

STATED, pursuant to 28 U.S.C. § 1292(b) and Rule 23 of the Rules of the United States Court of Appeals for the Third Circuit, that the within Order, in its grant of summary judgment to the plaintiff determining that Rutgers, The State University's dismissal regulations are unconstitutionally vague, involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the litigation.....

App. at 1132–33. This Court then granted the University permission to appeal from the certified interlocutory order.

### III.

Dr. San Filippo became a tenured professor of chemistry at the University in 1984. Before the University discharged him, he was highly respected by his peers for his professional achievements.

On January 6, 1986, the Dean of the Faculty of Arts and Sciences gave Dr. San Filippo written notice that various complaints had been made against him regarding his conduct towards visiting Chinese scholars brought to the University to work with him on research projects.[4] The allegations included verbal abuse, harassment, exploitation, attempted exploitation, intimidation, fraud, deceit and misrepresentation.

4. Dr. San Filippo had previous oral notice of the charges. On November 25, 1985 he met and discussed the charges with the Dean of Arts and Sciences, the assistant to the Dean, an American Association of University Professors (AAUP) advisor, and the Chemistry department Chairman and former Chairman. Dr. San Filippo chose not to respond to the charges at that time.

5. Regulations 3.94, 3.97, 3.98, 3.99 and 3.99a set forth the standards and requirements for dismissal of a tenured professor. They state:
3.94. Recommendations regarding dismissal of a tenured faculty member or a nontenured faculty member prior to the completion of his or her contract, when the ground is failure to maintain standards of sound scholarship and competent teaching, or gross neglect of established University obligations appropriate to

Dr. San Filippo responded with a written denial.

Over the next several months, various administrative actions were taken to investigate and dispose of the charges against Dr. San Filippo. The investigative phase ended on October 1, 1986, when Rutgers' President, Edward J. Bloustein, issued a formal charging document pursuant to University Regulation 3.97. The document stated that Dr. San Filippo "violated the basic ethical tenets of our profession, including those standards of professional ethics set forth in University Regulation 3.91, and that, in doing so, [Dr. San Filippo has] failed in [his] responsibilities to this University." App. at 892. Regulation 3.91 sets forth the Statement on Professional Ethics adopted by the AAUP. The document then stated the charges "meet the standards for dismissal set forth in University Regulations 3.93, 3.94, 3.97, and 3.99 and constitute gross neglect of established university obligations appropriate to your appointment and evidence a failure to maintain standards of sound scholarship and competent teaching." *Id.* Regulation 3.93 states that a tenured professor may be dismissed for "adequate cause" as defined in section 3.94. Regulation 3.94 defines adequate cause as "failure to maintain standards of sound scholarship and competent teaching, or gross neglect of established University obligations appropriate to the appointment, or incompetence, or incapacitation, or conviction of a crime of moral turpitude...." App. at 977.[5]

the appointment, or incompetence, or incapacitation, or conviction of a crime involving moral turpitude, are made to the president through the executive vice president and chief academic officer and the appropriate provost by deans of colleges and schools, with the advice of the faculty committee on appointments and promotions, and with the advice of the tenured faculty, at, or above, the particular rank in the faculty member's department.

3.97. If the President of the University finds reason to believe that a faculty member should be dismissed when the ground is that he has been convicted of a crime involving moral turpitude, or is incompetent, or is incapacitated, or has failed to maintain for himself standards of sound scholarship and com-

Specifically, the document set forth the following charges:

1. Your treatment of scholars visiting from the People's Republic of China and a Chinese Teaching assistant violated the standards of professional ethics required of all faculty members. More specifically, your treatment with respect to these individuals, as set forth more fully in the attached documents, is as follows:

   a. You took advantage of your professional position and exploited Mr. Hetian Gao and Mr. Changhe Xiao, both visiting scholars from the People's Republic of China, by directing them or by leading them to believe that they had no choice but to perform domestic work for you, such as garden work and indoor and outdoor cleaning work during the period May through July 1985.

   b. You attempted to exploit Ms. Yaru Zang, also a visiting scholar from the People's Republic of China, by attempting to make her perform domestic work for you.

   c. You exploited Messrs. Gao and Xiao by representing that they would be provided health benefits coverage and that you would deduct $700.00 from the salary to be paid each of them in order to cover the costs of such benefits. Despite deducting such sums, you did not provide coverage for Mr. Gao or Mr. Xiao.

   d. During the period of time that the above-named visiting Chinese scholars were at Rutgers, you threatened and harassed those individuals by repeatedly stating that you would send them back to China and by directing abusive language toward them.

   e. On or about March 31, 1986, you interrupted without sufficient cause a laboratory class being conducted by Teaching Assistant, Zong Ping Chen. You continued that incident by treating her in an unprofessional, threatening and abusive manner, within the hearing of other individuals, including her students.

2. On or about July 8, 1985, you directed Mr. Changhe Xiao, who had injured himself while doing maintenance work at your house, to identify himself as Mr. Peng Zhou in Middlesex Hospital in order to have Mr. Xiao covered by Mr. Peng Zhou's medical insurance.

3. You encouraged and permitted individuals working under your direction and supervision to submit false time reports and to make inappropriate

petent teaching, the President shall send the faculty member a notice stating in detail the charges against him and informing him that he is entitled to a hearing if he shall ask for it within two weeks and that, in the absence of a request for a hearing, he may be dismissed from the faculty.

3.98. If the faculty member requests a hearing, it shall be held by a panel of five, selected by lot from the elected members of the University Senate; but the parties may first exercise a reasonable number of challenges, and a member of the Senate may be excused from service on the panel at his own request, for good cause. The procedure at the hearing shall fully conform to the concept of due process; but the hearing shall not be public unless the respondent so requests. The President of the University shall designate a lawyer or a member of the faculty to present the charges, and the respondent shall be entitled to the aid of counsel. His reasonable expense shall be paid by the University. No administrative officer of the University shall participate in presenting charges, or as defense counsel, or as member of the panel.

3.99. The panel shall determine whether the charges, or any part thereof, are true; whether the matters charged and proved constitute ground for dismissal under section 3.93 above; and whether, taking into consideration the respondent's previous record and his value to the University, he should be dismissed or otherwise disciplined.

3.99a. The report of the panel shall be presented to the Board of Governors and a copy thereof sent to the respondent. Written as well as oral argument may be submitted to the Board on behalf of the President and the respondent. If further evidence is required by the Board, the panel shall be reconvened to receive it and to make any further findings that may be appropriate. The Board shall accord great weight to the findings of the panel, and its final action affirming, revising, or modifying the panel shall be by vote for such action by at least six members of the Board.

App. at 977–78.

charges against certain University accounts. Specifically:

a. In or about August 1985, Ms. Abbie Lieber, a secretary who works solely under your supervision, submitted a time report form, purportedly to compensate Mr. Hetian Gao and Mr. Changhe Xiao for extra computer (and/or library) work supposedly performed by them, but you told them that the payment was actually to provide them with money to purchase health benefits from the Chinese consulate. Both Messrs. Hetian Gao and Changhe Xiao thereafter received $100.00 each, charged against your NSF grant, despite the fact that you knew that they had not performed any extra work for the money. (Note the previous promise to provide health benefits recited in item 1.c. above.)

b. Ms. Marilyn Brownawell, who works directly under your supervision, submitted time report forms for the week ending August 17, 1984. She reported and was paid for 40 hours of work for that period, charged against the Chemistry Department's mass spectrometer account, even though you knew that she did not perform any work related to the mass spectrometer or indeed any compensable work for Rutgers of any kind during that period.

4. You violated professional and academic standards and exploited foreign visitors to the University by bringing to the University as post-doctoral fellows Chinese scholars who you knew did not have appropriate credential and by charging the stipends of such individuals, who did not possess doctoral degrees, to your NSF grant as post-doctoral fellows. Subsequently you supported these individuals for admission to the graduate program in Chemistry, a fact which clearly established that they did not have the credentials to be post-doctoral fellows.

5. During Fall 1985, you submitted an application for admission to the graduate program, including letters of reference, on behalf of Mr. Peng Zhou, one of the individuals referred to in #4. above. One of the letters of reference submitted by you purportedly was written and signed by Liu Guozhi. In fact, that letter was not prepared by Liu Guozhi, and you had knowledge of that fact and did not make it known when you submitted the letter.

6. On December 16, 1985, Professor Robert Boikess, Chair of your department, specifically instructed you not to permit Mr. Peng Zhou, Mr. Con-Yuan Guo, or any other graduate student except those already associated with your research group, to work in your laboratory, pending investigation of allegations of exploitation and harassment lodged against you by visiting Chinese scholars. Despite these specific instructions, you subsequently permitted Cong-Yuan Guo, Zhen-Min He, and Peng Zhou to perform work in your laboratory.

App. at 1050–52.

The document concluded that the charges against Dr. San Filippo, if proven, could be a basis for his dismissal, and that if Dr. San Filippo did not exercise his preliminary right to a hearing before a panel of five members of the University Senate (the Panel), President Bloustein would recommend to the Board of Governors (the Board) that Dr. San Filippo be dismissed. Dr. San Filippo requested a hearing before the Senate Panel and his request was granted. The Panel hearing took 250 hours and lasted forty-six days. *San Filippo*, 743 F.Supp. at 330. Following it, the Panel sustained charges 1a, 1c, 1d, 1e, 2, 3b, 4, 5, and 6 after determining that the facts alleged within those charges were true.[6]

The Panel sustained four of the five subparts of the first charge that Dr. San Filippo had "violated the standards of profes-

**6.** Our description of the specifics of the various charges and their disposition is taken primarily from the portions of the record that deal with the Panel proceedings noting, however, where the Panel's report differs materially from the findings and recommendations of the Board.

sional ethics required of all faculty members" through his abuse of visiting Chinese scholars at the University. App. at 892. With respect to charge 1a, the Panel found that Dr. San Filippo's verbal abuse and intimidation of the scholars created a climate in which they felt compelled to perform domestic services for Dr. San Filippo:

> Professor San Filippo took advantage of his professional position and exploited these visiting scholars in a manner that was demeaning and insensitive. Given his abusive and threatening treatment of Messrs. Gao and Xiao, their recent arrival in the United States, and his position as their supervisor, Messrs. Gao and Xiao had little choice in their response.

App. at 906.[7]

The Panel did not sustain charge 1b, which asserted that Dr. San Filippo "attempted to exploit" another Chinese visiting scholar by "attempting to make her perform domestic work" for him, App. at 893, because it found the evidence insufficient to support the charge. Charge 1c, which asserted that Dr. San Filippo had deducted money from the salary of two visiting scholars to cover health insurance premiums without obtaining any coverage for them, was sustained as to one visiting scholar, but not as to the other.

Charge 1d concerning Dr. San Filippo's use of threatening and abusive language toward the Chinese scholars was sustained as well. These outbursts concerned the scholars' work performance, a request by one to be taken to the hospital for an injury sustained while performing services for Dr. San Filippo at his home, and the failure of two scholars who had authorized deductions for health insurance premiums from their stipends to otherwise obtain and pay for health insurance from the Chinese consulate.

The Panel also sustained charge 1e concerning Dr. San Filippo's treatment of Zong Ping Chen. It did so after three witnesses testified that Dr. San Filippo had "used a loud, harsh, angry voice and yelled and used obscenities in his discussion with Ms. Chen." App. at 918. On this charge, the Panel found Dr. San Filippo's conduct unacceptable not only because he abused Ms. Chen but also because his interruption of her class "disrupt[ed] ... the learning environment." App. at 919.[8]

The Panel additionally sustained the second charge. While the Panel found that Dr. San Filippo did not necessarily "direct" Mr. Xiao to use Mr. Zhou's insurance card, it determined that this misrepresentation would not have occurred were it not for Dr. San Filippo's approval of the scheme. Further, while Dr. San Filippo paid Mr. Xiao's hospital bill, the Panel found his payment delinquent in that it only happened after the bill "was in the hands of a collection agency." App. at 921.

The Panel only sustained charge 3b concerning Dr. San Filippo's involvement with the submission of false time reports. The Panel sustained this charge because it found Dr. San Filippo had authorized Marilyn Brownawell, an employee working directly under his supervision, to submit time reports that resulted in pay from the chemistry department's mass spectrometer account for times when he knew she was on vacation. The Panel considered Dr. San Filippo's defense that he had an "informal" agreement with Ms. Brownawell regarding her compensation which explained the false time report but found that, even if true, it did not present a mitigating circumstance.[9]

---

**7.** While the Panel found that Dr. San Filippo "did not directly invite Mr. Gao and Mr. Xiao to come over to his house or direct them to do uncompensated work for him," App. at 905, the Board cited evidence that Dr. San Filippo had explicitly assigned chores to the scholars. App. at 998–99.

**8.** Dr. San Filippo claimed that he was frustrated at the attacks being made on his research program and that Ms. Chen was upset because she had been put on a wait list for the following

semester's teaching assistant roster. He further claimed that he was frustrated with Ms. Chen's handling of the teaching assistant application process. The Panel found these responses did not justify, explain or excuse his actions.

**9.** Dr. San Filippo claimed that the time form submitted by Ms. Brownawell was not fraudulent but was authorized by him so that Ms. Brownawell could be compensated for work that she had done for Dr. San Filippo in the past for which she had not yet been compensated.

It noted that this "informal" agreement resulted in less money being taken out of Dr. San Filippo's grant funds.

The Panel sustained the fourth charge as well. Among the sustained charges, this charge seems most closely related to the requirement stated in Regulations 3.91 and 3.94 that professors "maintain standards of sound scholarship and competent teaching." This charge concerned the appointment of two visiting scholars, Cong–Yuan Guo and Peng Zhou, as postdoctoral fellows. The Panel did not sustain it with respect to Mr. Guo but did with respect to Mr. Zhou. Dr. San Filippo had received a memorandum from the University's Vice President for Academic Affairs before he appointed Mr. Zhou stating that only individuals with doctoral degrees could be postdoctoral fellows. Mr. Zhou did not have a doctoral degree. Dr. San Filippo had also been notified by the chair of the chemistry department that Mr. Zhou did not possess the qualifications necessary to hold the position of a postdoctoral fellow. The Panel noted that Mr. Zhou's classification as a postdoctoral fellow gave Dr. San Filippo the advantage of a lower charge against his research grant.

The fifth charge, which asserted that Dr. San Filippo had submitted an individual's application to the University's graduate program knowing that it contained a recommendation letter of questionable integrity was also sustained. The recommendation was presented as an original letter from Liu Guozhi, a professor in China. In fact, it was the applicant's translation of a letter from Professor Guozhi which Dr. San Filippo had edited and on which translation the applicant had signed Professor Guozhi's name in the Chinese characters that represented the professor's signature. In sustaining this charge against Dr. San Filippo, the Panel noted there was "insuffi-

cient evidence to sustain a charge that there was no original letter of recommendation" from the professor who purportedly wrote the letter that was submitted. App. at 937.

Lastly, the Panel sustained the sixth and final charge which asserted that Dr. San Filippo had allowed three graduate students, Cong–Yuan Guo, Zhen-min He and Peng Zhou, to work in his laboratory after being specifically instructed in a memorandum from the chair of the chemistry department that he was not to allow them to work there pending investigation of the complaints lodged against him by visiting Chinese scholars. The Panel noted that the prohibition of Dr. San Filippo's use of graduate students was a "very strong action," but concluded it was not unreasonable given the gravity of the allegations against Dr. San Filippo and therefore should have been obeyed.[10]

Based on its determination that charges 1a, 1c, 1d, 1e, 2, 3b, 4, 5 and 6 were true, the Panel concluded that "the matters charged and proved" met the standard for dismissal of a tenured professor set forth in the University Regulations and, after taking into consideration Dr. San Filippo's "previous record and his value to the University" pursuant to Regulation 3.99, recommended to the Board of Governors that he be stripped of tenure and discharged from his position of professor. App. at 940. The Panel Report stated:

Professor San Filippo has exploited, threatened and been abusive of individuals who have worked under him in a professional capacity. In addition, we find that Professor San Filippo has demonstrated a serious lack of integrity in his professional dealings. His excellent research record and his contribution to the University are laudatory, and were

---

Dr. San Filippo also said that the business manager of the chemistry department led him to believe that he and Ms. Brownawell could continue their informal employment arrangement pursuant to which the time report had been submitted.

**10.** The Panel reported Dr. San Filippo's response that he did not adhere to his department

chair's order not to permit additional graduate students to work in his lab because Dr. San Filippo thought that it would have been "the death of his research program, and that [the] memo was unconstitutional, in violation of the principles of due process and academic freedom, and sections of the AAUP Bargaining Agreement." App. at 938–39.

considered by the Panel in reaching its decision. The Panel unanimously recommends, however, that Professor San Filippo be dismissed from the University. App. at 1031.

After reviewing the evidence and hearing oral argument as to each charge sustained by the Panel, the Board, one member dissenting, affirmed the Panel's conclusions and ordered Dr. San Filippo's immediate dismissal. It concluded that all the sustained charges evidenced "a failure to maintain standards of sound scholarship and competent teaching." App. at 1036. In sustaining ethical charges 1a, 1d and 1e with respect to Dr. San Filippo's abuse and exploitation of the visiting scholars, the Board relied in part on a portion of the AAUP's Statement on Professional Ethics set forth in University Regulation 3.91 concerning a professor's treatment of students.[11] App. at 1033. The Board, however, did not expressly rely on the AAUP Statement in sustaining the other charges against Dr. San Filippo. The Board reasoned that, "although the conduct involved in each of these charges is not specifically enumerated in the national AAUP's Statement on Professional Ethics[, a]ll of these charges flow directly out of Professor San Filippo's activities as a scholar and teacher and constitute serious ethical violations of his responsibilities in these areas." App. at 1036.

### IV.

The district court had subject matter jurisdiction over this case under 28 U.S.C.A. § 1331 (West Supp.1991) (federal question) and 28 U.S.C.A. § 1343(a)(3) (West Supp. 1991) (civil rights). We have appellate jurisdiction over the University's appeal from the interlocutory order granting Dr. San Filippo partial summary judgment on his

void for vagueness claim under 28 U.S.C.A. § 1292(b) (West Supp.1991).

Federal Rule of Civil Procedure 56 states that the moving party is entitled to summary judgment upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Our review of the district court's order granting partial summary judgment is plenary. *International Union, UMW v. Racho Trucking Co.*, 897 F.2d 1248, 1252 (3d Cir. 1990).

In undertaking that review, we look first to the record to determine whether Dr. San Filippo has produced evidence that would sustain his claim that the University's dismissal standards were void for vagueness. The district court's application of the void for vagueness doctrine to the University's dismissal standards is purely an issue of law subject to our plenary review. *Id.* We will assess Dr. San Filippo's claim in light of the legal principles set out in the cases involving attacks by discharged public employees upon dismissal standards as unconstitutionally vague to determine if he is entitled to summary judgment as a matter of law.

### V.

■ Rutgers argues that its dismissal regulations incorporate the AAUP Statement on Professional Ethics that is set out in Regulation 3.91 and relied on in part by the Board in its decision to discharge Dr. San Filippo. We reject that argument and instead agree with the district court that the Statement on Professional Ethics that appears in Regulation 3.91 is not incorporated into Regulation 3.93, the regulation

---

11. That portion of the AAUP's Statement in Regulation 3.91 states:

As a teacher, the professor encourages the free pursuit of learning in his students. He holds before them the best scholarly standards of his discipline. He demonstrates respect for the student as an individual, and adheres to his proper role as intellectual guide and counselor. He makes every reasonable effort to foster honest academic conduct and to assure that his evaluation of students reflects their true merit. He respects the confidential nature of the relationship between professor and student. He avoids any exploitation of students for his private advantage and acknowledges significant assistance from them. He protects their academic freedom. App. at 976.

setting forth the permissible bases for the dismissal of tenured faculty. We do so essentially for the reasons that the district court set forth in its published opinion. *See San Filippo,* 743 F.Supp. at 333–37.

▉ That conclusion, however, is not dispositive of Dr. San Filippo's void for vagueness claim. The question remains whether the dismissal standards set forth in Regulations 3.93 and 3.94, *supra* at 1128 n. 5, absent incorporation of the ethical standards set forth in Regulation 3.91, were void for vagueness. Our task in deciding this question is complicated by the way the parties have presented their arguments, both here and in the district court. In both fora they devoted most of their attention to the incorporation question. They devoted little attention to the remaining question, *i.e.,* whether the dismissal regulations absent 3.91 are void for vagueness.

The University, in the district court and in its appellate brief, did mention the argument that its general standard of "sound scholarship and competent teaching," absent incorporation of Regulation 3.91, could withstand a void for vagueness attack when considered in the context of the academic community's shared professional standards. *See* Brief for Appellant at 23–34. Dr. San Filippo also argued this issue before the district court and devoted a section of his appellate brief to it. *See* Brief for Appellee at 35–45. Thus, although the parties mainly focused on the incorporation issue, there is no unfairness to Dr. San Filippo in considering whether he has produced evidence that could show the University's dismissal standards, absent Regulation 3.91, are unconstitutionally vague.

Additionally, the district court had an opportunity to consider whether the University's discharge regulations absent Regulation 3.91 are void for vagueness and it did so. After concluding that Regulation 3.91 was not incorporated into the University's dismissal regulations so that purely ethical violations cannot be considered a dismissible offense, the district court also concluded that the dismissal regulations absent Regulation 3.91 were void for vagueness. *San Filippo,* 743 F.Supp. at 338. This is evidenced by the district court's statement that "[a]s applied to the conduct charged in this case, 'failure to maintain standards of sound scholarship and competent teaching' is void for vagueness." *Id.*

Under these circumstances, we believe it is both fair and appropriate for us to consider whether the general dismissal standards in Regulations 3.93 and 3.94, absent incorporation of the ethical standards in Regulation 3.91, are unconstitutionally vague.

▉ The due process clause of the Fourteenth Amendment says that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. Due process requirements apply to Dr. San Filippo because his tenured faculty position is a property interest.[12] In *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972), the Supreme Court of the United States said that in determining whether there is a property interest involved, and thus whether due process requirements apply, courts must look to the nature of the interest involved. "[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." *Id.* at 572, 92 S.Ct. at 2706. Whenever a "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *id.* at 573, 92 S.Ct. at 2707, a property interest is involved and due process requirements apply. It follows from these principles that a tenured university professor has a property interest in his position, and thus cannot be deprived of that position without due process. *See Slochower v. Board of Higher Educ.,* 350 U.S. 551, 559, 76 S.Ct. 637, 641, 100 L.Ed. 692 (1956) (summary dismissal of tenured professor violated due process right); *Morris v. Clif-*

---

12. Of course, regardless of the interests involved, no procedural due process is required unless state action is involved in the deprivation of property. It is clear that Rutgers, as a state university, is a state actor. No party has contended otherwise.

*ford,* 903 F.2d 574, 576 (8th Cir.1990) (tenured faculty member has constitutionally protected property right); *Yatvin v. Madison Metro. School Dist.,* 840 F.2d 412, 416 (7th Cir.1988) ("A tenured professor in a public university has a Fourteenth Amendment property right in his job; the right is created by his tenure contract with the university"); *Agarwal v. Regents of Univ. of Minn.,* 788 F.2d 504, 507 n. 2 (8th Cir. 1986) (same); *Harden v. Adams,* 760 F.2d 1158, 1167 (11th Cir.) (same), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). *Cf. Perry v. Sindermann,* 408 U.S. 593, 599–601, 92 S.Ct. 2694, 2698–99, 33 L.Ed.2d 570 (1972) (employment contract providing professor could only be terminated for cause constituted property right protected by Fourteenth Amendment).[13]

Generally, cases involving dismissals in violation of the principles set out in *Roth* involve pure procedural due process challenges concerning unfairness in the manner of dismissal. The district court has yet to rule on Dr. San Filippo's pure procedural due process claim and that claim is not before us on this interlocutory appeal. Dr. San Filippo's void for vagueness claim, however, poses a different problem. It asserts a violation of procedural due process apart from the manner in which he was dismissed. He claims the standards in the University's dismissal regulations are so broad and general that they did not put him on notice that he could be dismissed for engaging in the conduct with which he was charged.

■ The void for vagueness doctrine arose as an aspect of Fourteenth Amendment due process in the context of criminal statutes because it was thought unfair to punish persons for conduct which they had no notice could subject them to criminal punishment. *See Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).[14] The doctrine has been extended to civil cases. *See A.B. Small Co. v. American Sugar & Refining Co.,* 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925); *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967). It has further been applied in civil cases involving the discharge of public employees. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Lesser degrees of specificity are required to overcome a vagueness challenge in the civil context than in the criminal context, however, because the consequences in the criminal context are more severe. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

■ The doctrine is based on the idea of fairness. Its purpose is only to give "fair warning" of prohibited conduct. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). The

---

**13.** Strangely, no case in this Circuit specifically states that a tenured university professor has a property interest in his position. *Cf. Unger v. National Residents Matching Program,* 928 F.2d 1392, 1397–99 (3d Cir.1991) (citing *Yatvin* in discussion of property rights created by contracts with state entities); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1076 (3d Cir.1990) ("property interest in employment exists where state law supports a claim of entitlement to continued employment").

**14.** We note that the void for vagueness doctrine should be distinguished from the related doctrine of overbreadth which is not at issue here but often arises in conjunction with void for vagueness in cases where First Amendment free expression is at issue. The overbreadth doctrine permits a person who is not himself injured to raise the constitutional rights of others. *See Kreimer v. Bureau of Police,* 958 F.2d 1242,

1268 (3d Cir.1992). As a practical matter, it is a standing doctrine. The void for vagueness doctrine, on the other hand, requires the person raising it to show that he himself has been injured by the overly broad language. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1200 (3d Cir. 1988) (statute must be vague as applied to person challenging it).

In the university context, First Amendment issues sometimes arise with respect to academic freedom. This, however, does not affect our decision today. Dr. San Filippo does not raise an overbreadth challenge to the University regulations. He was not dismissed, nor does he allege that he was dismissed, for any reason relating to anything that could be considered a free expression issue. We note that he does make a First Amendment retaliation claim unrelated to his void for vagueness claim. That claim has not yet been considered by the district court and is not presently before us.

relevant inquiry is whether the statute or standard is:

> sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties ... consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

*Connally*, 269 U.S. at 391, 46 S.Ct. at 127; *see Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1177 (3d Cir.1990). It is well established the inquiry is undertaken on a case by case basis. The statute or standard is examined as to whether it is vague as applied to the affected party. *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

In the criminal context, the Supreme Court has held that since vagueness attacks are based on lack of notice, "they may be overcome in any specific case where reasonable persons would know their conduct puts [them] at risk" of punishment under the statute. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) (definition of mitigating circumstance in Oklahoma death penalty statute that murder was "especially heinous, atrocious, or cruel" held unconstitutionally vague). Thus, to be constitutional, criminal statutes need only give "fair warning" that certain conduct is prohibited. *Colten*, 407 U.S. at 110, 92 S.Ct. at 1957. Simply because a criminal statute could have been written more precisely does not mean the statute as written is unconstitutionally vague. *United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 321, 46 L.Ed.2d 228 (1975). Certainly if such general standards in criminal statutes are sufficiently precise to withstand attack as void for vagueness, analogous standards in

the civil context where less specificity is required satisfy due process.

In the public employment context, the Supreme Court has reiterated that the vagueness doctrine is based on fair notice that certain conduct puts persons at risk of discharge. Such standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge. *Arnett*, 416 U.S. at 159, 94 S.Ct. at 1647. Accordingly, broad public employee dismissal standards have been upheld against void for vagueness attacks. The *Arnett* Court upheld the general standard "such cause as will promote the efficiency of the service" for dismissal of civil service employees. *Id.* It stated:

> "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. '[T]he general class of offense to which ... [the provisions are] directed is plainly within [their] terms ..., [and they] will not be struck down as vague, even though marginal cases could be put where doubts might arise.' *United States v. Hariss*, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954)."

*Id.* (quoting *Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796 (1973)); *see Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972) ("Condemned to the use of words, we can never expect mathematical certainty from our language."). The Court noted that employees could be guided, in using their common sense, by "longstanding principles of employer-employee relationships, like those developed in the private sector." *Id.* at 160, 94 S.Ct. at 1647.[15]

---

**15.** The *Arnett* court also stated that the employees in that case had the benefit of a personnel manual that added to the general standard. We

do not believe the manual's existence was the basis for the court's holding, however. It simply acknowledged the manual in a footnote to

In cases specifically involving dismissals of teachers or professors, the courts have upheld general standards against vagueness attacks. In *Wishart v. McDonald,* a tenured sixth grade public school teacher was discharged when he carried, dressed, undressed and caressed a mannequin in public view on his property located in the town in which he taught. The school's dismissal regulation provided a tenured teacher could be dismissed only for "conduct unbecoming a teacher ... or other good cause." *Id.* at 1111. The court, applying *Arnett,* held the regulation was not void for vagueness as applied to Wishart because his behavior was fairly identifiable by an ordinary person as conduct unbecoming a teacher. Therefore, the regulations gave him notice that his conduct put him at risk of dismissal. *Id.* at 1116. The court stated: "The choice between specific rules and general standards is a difficult one; each has its unique costs. The real safeguard under a general standard is the common-law adjudicatory process and judicial review." *Id.* at 1117 (citation omitted).

In *Garrett v. Mathews,* 474 F.Supp. 594 (N.D.Ala.1979), *aff'd,* 625 F.2d 658 (5th Cir. 1980) (per curiam), a tenured university professor found to have been insubordinate in not opening mail from his superior, in failing to comply with his superior's request to supply a list of publications and in failing to keep office hours was dismissed under an "adequate cause" standard. The court upheld the professor's dismissal concluding that the term "adequate cause" was no more vague than the standard approved by the Supreme Court in *Arnett. Id.* at 599; *see Fowler v. Board of Educ.,* 819 F.2d 657, 664–65 (6th Cir.1987) (applying *Arnett* and *Wishart* in upholding dismissal standard of "conduct unbecoming a teacher").

Under these decisions, while Rutgers dismissal regulations are broad and general, they are not unconstitutionally vague. Dismissal for failure to maintain "standards of

sound scholarship and competent teaching" does not fail to specify *any* standard for dismissal but rather provides a standard which encompasses a wide range of conduct. We reject the district court's narrow reading of this standard based on the absence of a "catch-all" provision in Rutgers' dismissal regulations, and embrace the "common sense" approach of *Arnett* and its progeny. Professors at Rutgers can evaluate their behavior's conformity to the dismissal regulations. A reasonable, ordinary person using his common sense and general knowledge of employer-employee relationships would have fair notice that the conduct the University charged Dr. San Filippo with put him at risk of dismissal under a regulation stating he could be dismissed for "failure to maintain standards of sound scholarship and competent teaching." Regulation 3.94. He would know that the standard did not encompass only actual teaching or research skills. Here, all of Dr. San Filippo's charged actions sprang from his role as a faculty member at the University. It is not unfair or unforeseeable for a tenured professor to be expected to behave decently towards students and coworkers, to comply with a superior's directive, and to be truthful and forthcoming in dealing with payroll, federal research funds or applications for academic positions. Such behavior is required for the purpose of maintaining sound scholarship and competent teaching. The academic community can reasonably conclude that otherwise the educational atmosphere is likely to become so tainted and disturbed that it would become impossible to "maintain standards of sound scholarship and competent teaching." *Id.* We find further support for our holding in the following statement by the Panel:

Through these proceedings, the Panel has felt particular concern for pressures on all of the Chinese scholars that have been involved in the matter before the Panel. Coming to a foreign land to

demonstrate that it could aid employees in ascertaining the "longstanding principles" of employer-employee relationships to guide them in their behavior. *See Arnett,* 416 U.S. at 160 n. 24, 94 S.Ct. at 1647 n. 24. Further, the language

in the manual shows the breadth of the regulation but does not make it any more specific. *See id.* The court in *Wishart v. McDonald,* 500 F.2d 1110, 1116 (1st Cir.1974) similarly construed the *Arnett* holding.

study can be unsettling enough, but to become embroiled in a dismissal proceeding can do nothing to aid their scholarship or personal well-being, or the reputation of the University. We urge the University to avail itself to the fullest to be supportive of foreign scholars and to be sensitive to the pressures that can be placed on them, both willingly and unwittingly, because of their inexperience with our culture and their dependence on their faculty sponsors and the University as a whole.

App. at 942.

Thus, Rutgers' dismissal regulations are not void for vagueness, even though they do not incorporate the ethical standards set out in Regulation 3.91. The general standards of Regulations 3.93 and 3.94 are sufficient to survive a void for vagueness attack. Were we to accept Dr. San Filippo's argument that 3.93 and 3.94 were void for vagueness absent 3.91, the University could never discharge Dr. San Filippo, or any other tenured professor, for any conduct not directly involving teaching or research short of committing a crime of moral turpitude. We are unwilling to countenance such a result. Indeed, its starkness may explain the district court's evident dissatisfaction for its own result. *See San Filippo*, 743 F.Supp. at 338 (stating that Dr. San Filippo's charged conduct is "alien to any concept of how civilized professionals should comport themselves").

We think that unpalatable result arose out of the district court's failure to distinguish the lack of notice inherent in the void for vagueness doctrine from the substantive due process issues presented by a discharge not rationally related to, or covered by, general standards of acceptable conduct. Its confusion of these principles is traceable to the way Dr. San Filippo presents his void for vagueness claim. As set out in his Third Amended Complaint, Dr. San Filippo's void for vagueness claim confuses two distinct due process themes. *See supra* at 1126 n. 2. The theme that

dominates is void for vagueness but, as stated and presented to both the district court and us, it echoes a second theme with overtones of pure substantive due process. The sounds of substantive due process echo back most clearly in Dr. San Filippo's argument that the University's decision to strip him of tenure was based on ethical standards that were not a part of his contract and that his actions towards the visiting Chinese scholars bore no relation to sound scholarship or competent teaching, even if we suppose that those broad, general concepts had been more specifically defined by the ethical standards whose incorporation into Rutgers dismissal standards we have already rejected.[16] This confuses the two doctrines. In a void for vagueness attack, the claim is that the standard is so vague that it is no standard at all and that lack of a standard caused the injury. In a substantive due process attack, the claim is that the standard was not rationally applied to your conduct and thus you were injured.

The Supreme Court's decision in *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) provides guidance. There, in considering whether the University's refusal to allow a student to retake an important examination violated the student's due process rights, the Court stated:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. Cf. *Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 2469, 73 L.Ed.2d 28 (1982).

Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.

16. Here, we note that although the University's decision was based in part on ethical charges it considered to violate Regulation 3.91, it was as well dependent on charges the University specified violated Regulations 3.93 and 3.94.

*Id.* at 225, 106 S.Ct. at 513 (footnote omitted.) Additionally, several circuits have considered substantive due process claims by dismissed tenured professors or teachers. *See Newman v. Burgin,* 930 F.2d 955, 962–63 (1st Cir.1991) (arbitrary decision significantly affecting tenured professor's employment status may violate substantive due process); *Morris v. Clifford,* 903 F.2d 574, 577 (8th Cir.1990) (recognizing tenured professor's due process right to be free from discharge for "arbitrary and capricious" reasons); *Agarwal,* 788 F.2d at 507 (same); *McEnteggart v. Cataldo,* 451 F.2d 1109, 1111 (1st Cir.1971) (substantive due process challenge to college's failure to renew non-tenured professor's contract required proof that reasons "were unrelated to the educational process or to working relationships within the educational institution"), *cert. denied,* 408 U.S. 943, 92 S.Ct. 2878, 33 L.Ed.2d 767 (1972). *Cf. Bello v. Walker,* 840 F.2d 1124, 1129 (3d Cir.) (deliberate and arbitrary abuse of government power violates substantive due process), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).[17]

The district court and Dr. San Filippo have not fully recognized the distinctions among his constitutional right to fair notice that the charges against him could subject him to dismissal and his substantive due process right to be safe from arbitrary and capricious discharge for conduct that has no rational relation to his duties as a tenured university professor.[18] Dr. San Filippo's arguments on void for vagueness disguise the differences between a state actor's adoption of a statute or a regulation that is so broad it fails to give notice as to what it prohibits with a failure to apply those standards rationally to his conduct. Thus, he fogs the distinctions among federal remedies for violation of substantive and procedural due process and failure to meet the due process standards of fair notice

implicit in the void for vagueness doctrine, as that doctrine is applied to discharges from public employment.

Whether Dr. San Filippo has alleged or can establish that the University is liable for wrongfully discharging him on the basis of substantive due process, some other constitutional tort or breach of state contract law has not yet been decided by the district court. Those alternatives are not before us on this certified interlocutory appeal.

Likewise, none of Dr. San Filippo's other claims are now before us. They are: that his dismissal was in retaliation for activity protected under the First Amendment in violation of the United States and New Jersey Constitutions, that his dismissal violated his right to equal protection of the law under the United States and New Jersey Constitutions, that the conduct of the Senate Panel Hearing violated his right to procedural due process under the United States and New Jersey Constitutions and the pendent state claim that his dismissal was a violation of his contract with the University.

On remand, if the district court decides that none of these other federal claims are viable and that Dr. San Filippo has not stated or shown a substantive due process claim by reason of a wholly arbitrary deprivation of his tenure rights or otherwise brought a valid section 1983 claim, it will, of course, be necessary for the district court to exercise its discretion to decide whether to hear Dr. San Filippo's pendent state claim, in accordance with the standards set out in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–28, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966).

### VI.

We will reverse the district court's grant of partial summary judgment in favor of

---

**17.** On the general subject of substantive due process in cases involving dismissals of public employees, *see* Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 6.13 (3d ed. 1992).

**18.** It may also be important to avoid confusing a claim for a deprivation of substantive due process and Dr. San Filippo's express claim un-

der state contract law not to be deprived of tenure unless he acts in a manner that his tenure contract, reasonably read, prohibits and assigns as a ground for discharge. This claim is not presently before us because the district court has not yet ruled on it.

Dr. San Filippo on his void for vagueness claim and its denial of the University's motion on this same claim and remand this case for further proceedings consistent with this opinion.